Reese, J.
delivered the opinion of the court.
It appears.from the record' in this cause, that one Pleasant Creasay purchased a quantity of flour from Jacob Kibler and Samuel Kibler. It does not appear whether the Messrs. Kib-ler constituted a co-partnership firm, either general or limited.
To secure to them the payment of the price of the flour so purchased, Creasay on the 27th day of January, 1838, executed his bill single, or covenant of the following tenor:
*22 “On or before the first day of May next, I promise to pay Jacob and Samuel Kibler, three hundred and fifteen dollars in good sound State Bank Notes, State of Georgia, Tennessee and Alabama, all of either or part as may suit said Creasay, the same for value received, this 27th January, 1838.
PLEASANT CREASAY, [Seal.]”
On the 27th day of July, 1838, Joseph B. Gilman, the defendant in this case, transmitted to the Messrs. Kibler the following letter:
“Mr. Jacob Kibler and Samuel — Gentlemen—You hold a note of hand on Pleasant Creasay for $315, which I am a witness to, and should you require security, I request you to place my name to the note, and this order shall be your voucher for the same. With much respect, I am your friend,
Jos. B. Gilman.
Fall Branch, July 27th, 1838.”
The Messrs. Kibler received the above letter on the day of its date, but did not then place the name of the writer to the bill single or covenant of the said Creasay above set forth. Whether they did not require security to the same, or did not think it well described and identified by the terms of the letter, being a sealed covenant and not witnessed by Gilman, or whether being payees thereof, they questioned either the legality or the propriety and prudence of their affixing the name of another, does not satisfactorily appear. -But so it is, they did not affix the name of Gilman to the instrument. Several months after-wards Jacob Kibler died, the name of Gilman not then being affixed to the instrument. On the 12th of August, 1839, this suit was brought, and the name of Gilman was not then affixed to the instrument. After the suit was in court, the signature “Joseph B. Gilman by Samuel Kibler” was placed upon a blank paper, which was appended to the instrument below the signature and seal of said Pleasant Creasay, and thereon a declaration was filed.
The first count is the ordinary count in assumpsit against Gilman as the maker of a promissory note. The second count is indebitatus assumpsit for flour sold to Gilman and Creasay. And the third alleges, that flour was sold to Creasay, and that *23 Gilman became bound and liable-to pay, and promised to pay therefor. As to the first count, the defendant pleads on oath, under the statute, that he did not sign the instrument or authorize its signature, upon which there was issue. Non-assumpsit was pleaded to the other two counts and issue taken thereon.
Verdict and judgment were rendered in favor of the plaintiff below. A motion for a new trial was made by the defendant, which was overruled by the court, and the defendant has prosecuted his appeal to this court. And here it is correctly admitted by the counsel for the plaintiff below, that no recovery could be had upon the second and third counts of the declaration. The action can be maintained upon the' first count, if the signature of Gilman’s name to the instrument, under the circumstances of time, manner, &c. were valid, and founded upon an adequate consideration. The first will depend upon a construction of the letter or written authority; the latter upon the proof. “If you should wish security, you are requested to place my name on the note.” The construction of this clause, which indeed is the whole of the matter, can present no difficulty. It is not the creation of an absolute or independent obligation; it is merely the authority to create one, if the agent should think it for his interest to do so. “If you should wish security, you are requested to place my name to the note.” Can the Messrs. Kibler upon this say, we do wish security, but we will not place your name upon the note. Nevertheless, we hold 3rou bound upon the letter? Certainly not. The only mode in which they could signify and assert that they wished and required security, was by placing the name of Gilman upon the note. If they did not do so, they thereby furnished evidence that they did not require his security. The covenant had been in existence six months; it had been due nearly three months. Under these circumstances did the letter mean, “if you should not require security now, because you may believe Creasay to be good, or for any other reason, still, if twelve months hereafter, from a change in his circumstances, you should require security, then place my name to the note?” It can be held to mean no such thing; and, therefore, if Jacob Kibler had continued to live, and had joined in the act of affix *24 ing the signature at the time it was done, the act could not have been sustained, we think, by a correct construction of the power. The acceptance of Gilman as surety, could be manifested, as we have said, in no other way than by the execution of the power; and such acceptance and execution could not be left an open question indefinitely, and at some future time, or under other circumstances, be given and performed at the election of the Kiblers. It is, therefore, not necessary to enquire into the difference of the execution of the power as it was attempted by the surviving Kibler, and its execution by both. We will state, however, that in a case like this, where neither the writing nor proof, aliunde, show a partnership, it would be difficult to maintain, other objections aside, the execution of the power by the survivor. The view which we have taken of the construction of the instrument removes or diminishes the necessity of much or any discussion on the other branch of the question, namely, the considération required to render the defendant liable upon his signature to an instrument already in existence and founded upon a past consideration between others. The letter or agreement upon its face shows no consideration whatever. Under our statute of frauds it has been settled, that it need not do so. It is sufficient that a valid consideration exists. It may be proved aliunde. The past consideration will not maintain the promise; it is necessary that there should be a new consideration between the new parties. This maybe either some benefit or advantage to the promisor, or some detriment or loss connected with or arising out of the agreement itself to the promissee. The consideration here insisted on, is an agreement to forbear suit against Creasay-. There is no satisfactory proof of the existence of such an agreement. If in consequence of the reception of the letter from Gilman by the Kiblers, any loss or detriment in fact followed to the latter, without their having made- any agreement'to forbear, this would not be such a loss or detriment as would amount to a consideration maintaining the promise of Gilman; and yet such seems to be the meaning of the charge of the Circuit Court upon this point of the case. And so far we think the charge was erroneous.
*25 Many other questions were discussed in the Circuit Court and have been again' discussed here,' into which we do not deem it necessary to enter. And many facts, very discreditable to the plaintiff in error, have been voluminously accumulated upon the records, because he, not placing himself upon the just and legal grounds of defence which we have in this opinion set forth, chose, by the most questionable means, to represent a state of the facts contrary to the truth, by the introduction of spurious or suppositious papers for the covenant and power of attorney or letter produced and relied on by the. plaintiff below.
But to whatever just indignation the plaintiff in error may, on this ground, have subjected himself, it cannot of course deprive him of the benefit of that available defence to which, in the former part of this opinion, we have shown that he is entitled.
Let the judgment be reversed, and a new trial of the case be had in the Circuit Court.